UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **N.U.** *on behalf of* M.U., MINOR CHILD, <br><br> Plaintiff, <br><br> v. <br><br> **MANSFIELD TOWNSHIP SCHOOL DISTRICT**, *et al.*, <br><br> Defendants. | Civil Action No. 19-14894 <br><br> **OPINION** |

**Appearances:**

Ifeoma Y. Ejezie
EJEZIE LAW FIRM, LLC
6 South Broad Street, Floor 2
Elizabeth, NJ 07202

Megan Adeyinka Oduyela
824 Habortown Boulevard
Perth Amboy, NJ 08861

    *On behalf of Plaintiff N.U.*

Marc G. Mucciolo
METHFESSEL & WERBEL
2025 Lincoln Highway Suite 200
Edison, NJ 08818

    *On behalf of Mansfield Township School District, Glenn Kershner, Julie Katz, and Tiffany Moutis.*

**O'HEARN, District Judge.**

## I. INTRODUCTION

Presently pending before the Court is a Motion for Summary Judgment by Defendants Mansfield Township School District, Glenn Kershner, Julie Katz, and Tiffany Moutis,[1] (ECF No. 52), as to all claims in Plaintiff N.U.'s Amended Complaint. The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the following reasons, Defendants' Motion for Summary Judgment, (ECF No. 52), is denied.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, N.U., is the mother of M.U., a minor child and former public-school student in the Mansfield Township School District ("the District"). (Def. SOMF, ECF No. 52-3 ¶¶ 1–2). She brings this action against the District and its employees: Glenn Kershner, the Principal of Mansfield Township Elementary School, Julie Katz, the Anti-Bullying Specialist for Mansfield Township Elementary School, and Tiffany Moutis, the Superintendent of the Mansfield School District. (Def. SOMF, ECF No. 52-3 ¶¶ 2, 4–6).

---

[1] It is unclear whether the Motion was filed on behalf of one or all defendants. This Motion appears on the docket as filed by the District ("MOTION for Summary Judgment by MANSFIELD TOWNSHIP SCHOOL DISTRICT"), and the brief is titled "DEFENDANT, MANSFIELD TOWNSHIP BOARD OF EDUCATION's BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT," and the proposed Order (ECF No. 53-5) purports to grant summary judgment only as to the District. However, within the Motion there are extensive references to Defendants, plural, the prior Motion for Summary Judgment that was dismissed for failure to comply with L. Civ. R. 56.1 was filed on behalf of all Defendants, all Defendants share the same counsel, and the docket does not reflect that the individual Defendants have been dismissed in this matter. (See docket generally, ECF Nos. 41, 52). Although this is just one of the many issues with the Motion, the Court will nevertheless liberally construe the Motion as one brought by all Defendants. The Court will not, however, address issues which have not been properly briefed.

### A. The Incidents

The allegations involve three incidents that occurred during the 2016–2017 and 2017–2018 school years when M.U. was attending the Mansfield Township School District for 5th and 6th grades. (Def. SOMF, ECF No. 52-3 ¶ 3).

The first of the three incidents, the "ugly incident," occurred on April 13, 2017. (Def. SOMF, ECF No. 52-3 ¶ 7). In that incident, another student told M.U. that he was ugly because he was Black. (Def. SOMF, ECF No. 52-3 ¶ 7). Defendants contend that Principal Kershner immediately contacted Ms. Katz to initiate the investigation but Plaintiff disputes that Principal Kershner acted immediately. (Def. SOMF, ECF No. 52-3 ¶ 8; Pla. Resp. to Def. SOMF, ECF No. 54-2 ¶ 8). Ms. Katz investigated, determined that the conduct met the definition of harassment, intimidation, and bullying ("HIB"),[2] and recommended discipline. (Def. SOMF, ECF No. 52-3 ¶¶ 12–13).

---

[2] The Anti-Bullying Bill of Rights Act ("the Act") provides:

> "Harassment, intimidation or bullying" means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c. 122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;
> b. has the effect of insulting or demeaning any student or group of students; or
> c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

N.J.S.A. 18A:37-14.

The second incident, the "Trump incident," occurred on December 8, 2017. (Def. SOMF, ECF No. 52-3 ¶ 18). In that incident, M.U. told another student that he looked like then President Donald Trump. (Def. SOMF, ECF No. 52-3 ¶ 18). Ms. Katz began her investigation three days after the incident on December 11, 2017 and determined that the conduct met the definition of HIB, and recommended discipline as well as the separation of the two students. (Def. SOMF, ECF No. 52-3 ¶¶ 19–20, 22).

The third and final incident, the "n-word incident," occurred on December 22, 2017. (Pla. SOMF, ECF No. 54-3 ¶ 15). The parties dispute when Defendants first became aware of this incident. Plaintiff alleges that N.U. immediately reported the incident to his teacher, was sent to the Principal's office, and filled out a report the same day. (Pla. SOMF, ECF No. 54-3 ¶¶ 16–19). Defendants claim there was no such report and Principal Kreshner was not aware of the incident until Plaintiff N.U. reported it by phone on January 26, 2018. (Def. Resp. to Pla. SOMF, ECF No 57-1 ¶¶ 16–19; Def. SOMF, ECF No. 52-3 ¶ 32). Plaintiff alleges that she notified Defendants again by phone on February 1, 2018, and then by email on February 9, 2018 before Defendants began an investigation. (Pla. SOMF, ECF No. 54-3 ¶¶ 19–21). The HIB investigation report indicates that the report was "entered" on February 1, 2018, but separately indicates that it was "created" on March 22, 2018. (Mucciolo Cert, ECF No. 52-7 Exh. F).

During the investigation, M.U. reported that another student ("offending student") came up to him and said "No offense, but you're a n*****." ("n-word" HIB Report, ECF No. 52-7). He added that he was "a little offended but doesn't really care what [the other student] says." ("n-word" HIB Report, ECF No. 52-7). According to Ms. Katz's investigation reports, a group of students pestered the offending student to call M.U. the "n-word." ("n-word" HIB Report, ECF No. 52-7). The offending student said he "didn't know what it meant" and that M.U. "acted sad" but they remained "best friends." ("n-word" HIB Report, ECF No. 52-7). Other students provided

4

mixed reports of M.U. being upset and the offending student attempting to apologize. ("n-word" HIB Report, ECF No. 52-7). Ms. Katz determined that the offending student's conduct met the definition of HIB, and recommended discipline as well as the separation of the two students. (Def. SOMF, ECF No. 52-3 ¶ 39).[3]

At some point during these investigations, Plaintiff alleges that Principal Kershner was "watching" M.U. during the school day—coming into classes and staring at him—in a way that M.U. described as "creepy" and made M.U. not want to return to school. (Am. Compl., ECF No. 5 ¶¶ 8, 11). Plaintiff contends that all of these incidents "negatively affected M.U.'s confidence and self-esteem to continue to pursue his education." (Am. Compl., ECF No. 5 ¶ 13).

### B. Trump Incident Administrative Proceeding

Plaintiff challenged the HIB finding against M.U. in the Trump incident and requested a hearing before the Office of Administrative Law (OAL). (OAL Decision, ECF No. 61-1 at 2). An Administrative Law Judge (ALJ) held a hearing on March 3, 2020 to resolve the dispute between Plaintiff and the Board of Education of the Town of Mansfield, Burlington County.[4] (ECF No. 61-1 at 1–2). After the conclusion of Plaintiff's case, the ALJ granted the District's motion to dismiss finding that Plaintiff had failed to meet her burden of showing the District acted arbitrarily and capriciously. (ECF No. 61-1 at 2). The New Jersey Commissioner of Education ("Commissioner")

---

[3] To the extent that Plaintiff denies this fact, (Pla. Resp. to Def. SOMF, ECF No. 54-2), she does so claiming that the investigation was delayed, and she had to obtain a lawyer to push for the investigation to occur in the first place—this is not a proper denial under Rule 56.1 as it does not fairly meet the substance of the stated fact, and further it is clear from the record that an investigation did occur, (Mucciolo Cert., ECF no 52-7 Exh. F), thus, Defendants SOMF ¶ 39 is deemed admitted.

[4] The Board of Education of the Town of Mansfield, Burlington County and Mansfield Township School District are different names for the same legal entity and, therefore, the Court will refer to them in the singular, as "the District."

remanded the matter on April 24, 2020 for further investigation because there was insufficient evidence and discussion of the second and third elements necessary to sustain a HIB finding.[5]

On remand, Plaintiff did not participate in the prehearing conference and the matter was again dismissed on August 31, 2020. (ECF No. 61-1 at 3). The Commissioner entered an order on October 9, 2020 remanding the matter for the second time "for further proceedings necessary to reach a determination on the merits." (ECF No. 61-1 at 3). The ALJ held a virtual hearing on July 19, 2021 in which Plaintiff and the District presented witnesses and exhibits. (ECF No. 61-1 at 12). The ALJ found that the District had satisfied all of the HIB elements. (ECF No. 61-1 at 9–10). The Commissioner rendered a final decision on August 10, 2022 reversing the decision of the ALJ and finding that M.U.'s conduct did not meet the definition of HIB. (Final Decision of Commissioner of Education, ECF No. 59). The Commissioner focused on the second HIB element, specifically noting that

> While two of the [District]'s witnesses testified that the alleged victim shaved his head and felt reluctant to return to school, there is no documentary support for that information or indication that that information was presented to the [District]. The victim statement included in the HIB report does not reference either the head shaving or any reluctance to return to school, or any other information that demonstrates that M.U.'s comments substantially disrupted or interfered with the rights of other students or the orderly operation of the school. The Commissioner therefore concludes that the [District]'s decision was arbitrary, capricious, and unreasonable because there is no evidence that the [District] considered all of the factors required to prove an element of the HIB.

(Final Decision by the Commissioner of Education, ECF No. 61-1 at 3–4).

### C. Procedural History

Plaintiff commenced this action on July 8, 2019 and filed an Amended Complaint on August 6, 2019. (ECF Nos. 1, 5). When Defendants moved for summary judgment on June 1,

---

[5] *See supra* n.2.

2022,[6] there had not yet been a final decision in the Trump incident proceeding. (Def. SOMF, ECF No. 52-3 ¶ 31). Plaintiff subsequently notified the Court that the Commissioner rendered a final decision in the appeal of the Trump incident on August 10, 2022. (Pla. Letter, ECF No. 59). The Court granted the parties leave to submit letters discussing the implication of the final decision on the exhaustion argument. (ECF Nos. 60, 61). In response to the Court's Order, Plaintiff submitted a letter on September 8, 2022, (ECF No. 61). Defendants failed to respond.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs, LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122

---

[6] Defendants' first Motion for Summary Judgment filed on October 11, 2021 was terminated by the Court for failure to adhere to L. Civ. R. 56.1, and a renewed Motion for Summary Judgment was filed on June 1, 2022.

F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); *see Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

## IV. DISCUSSION

Plaintiff asserts three claims: (1) §1983 claim for violation of Plaintiff's Freedom of Speech as articulated in Article 1 of the New Jersey Constitution; (2) Hostile Educational Environment under Title VI 42, U.S.C. § 2000d; (3) Discrimination and/or Hostile Educational Environment under the New Jersey Law Against Discrimination, ("NJLAD"), N.J.S.A. § 10.5-12. (Am. Compl., ECF No. 5).

### A. Exhaustion

Defendants argue that the crux of Plaintiff's Amended Complaint is an alleged violation of N.J.S.A. 18A:37-15, the procedures of initiating a HIB investigation, and that she has disguised that allegation as Title VI, NJLAD, and constitutional violations. (Def. Br., ECF No. 52-4 at 5–6). Defendants contend, without citing a single state or federal case, that Plaintiff has failed to exhaust her state administrative remedies with the OAL and Commissioner because there had not yet been a final decision in the Trump incident proceeding at the time the Motion was filed, and Plaintiff did not appeal the "n-word" incident. (Def. Br., ECF No. 52-4 at 5–6).

Subsequent to the filing of the Motion for Summary Judgment, Plaintiff notified the Court that the Commissioner rendered a final decision on the appeal of the Trump incident on August 10, 2022. (ECF No. 59). The Court granted the parties leave to submit supplemental briefings to address the implication of the final decision on the exhaustion argument made by Defendants in its then pending motion. (ECF Nos. 60, 61). Defendants, who filed this Motion and asserted such

8

arguments, inexplicably, failed to respond. Thus, to the extent that Defendants argue that Plaintiff was required to wait for a final decision in the Trump incident before bringing this case, such argument is moot. (Final Decision of Commissioner of Education, ECF No. 61-1). Further, contrary to Defendants' blanket assertions otherwise, a plaintiff need not exhaust any state or federal administrative remedies before bringing claims under Title VI, the NJLAD, or § 1983. *Chowdhury v. Reading Hosp. and Med. Center*, 677 F.2d 317, 322 (3rd Cir. 1982) (finding administrative exhaustion is not required prior to bringing a discrimination action under Title VI); *Hernandez v. Region Nine Hous. Corp.*, 146 N.J. 645, 652–53 (1996) ("a plaintiff need not exhaust administrative remedies prior to bringing a LAD action"); *Hochman v. Bd. of Ed. of City of Newark*, 534 F.2d 1094, 1096 (3d Cir. 1976) ("The Supreme Court has consistently noted that exhaustion of state remedies, whether judicial or administrative, is not required prior to the commencement of an action under 42 U.S.C. § 1983 in federal court."). Thus, in addition to being moot, Defendants' argument fails on the merits.

As for the "n-word" incident, the Court disagrees that Plaintiff's claims are merely a challenge to Defendants' regulatory violations—rather Plaintiff relies upon the alleged violations as evidence of Defendants' discriminatory conduct in violation of state and federal law.

### B. First Amendment

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging violation of M.U.'s First Amendment rights under the Constitutions of the United States and State of New Jersey. (Am. Compl., ECF No. 5 ¶ 14).[7]

---

[7] While the cause of action is listed as "DEPRIVATION OF FREEDOM OF SPEECH (42 U.S.C., SECTION 1983, ARTICLE 1 OF THE NEW JERSEY CONSTITUTION)," paragraph 14 of the Amended Complaint and Plaintiff's brief discuss the federal constitution as well. (Am. Compl., ECF No. 5). The Court will construe this claim liberally to encompass both the state and federal constitutions.

The Supreme Court has made clear that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, it is equally clear that "schools have a special interest in regulating speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2045 (2021) (internal quotations omitted) (quoting *Tinker*, 393 U.S. at 506).

The entirety of Defendants' argument is that "the victim felt insulted and demeaned by M.U." and therefore the speech was not protected and Defendants did not act inappropriately in disciplining him. (Def. Br., ECF No. 52-4 at 17). Defendants' brief contains just a single paragraph on this issue and cites three federal cases setting forth the general standard for a school to regulate speech in the education environment. (Def. Br., ECF No. 52-4 at 17). Defendants provide no analysis to further give context to the facts of this case particularly after the Commissioner found the District's actions in disciplining N.U. for this incident to be "arbitrary, capricious, and unreasonable because there is no evidence that the District considered all of the factors required to prove an element of the HIB." (Final Decision by the Commissioner of Education, ECF No. 61-1 at 3–4). The Commissioner's findings are factually and legally opposite to Defendants' arguments in this case. Despite the parties' failure to address it, the doctrine of collateral estoppel is instructive if not determinative given that there was an administrative proceeding that made specific factual findings regarding the Trump incident.

Courts "have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *see Pieczynski v. Barnhart*, 430 F. Supp. 2d 503, 510 (W.D. Pa. 2006) (citing *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22 (1966) ("It is well recognized that collateral estoppel and the

related doctrine of res judicata apply not only to judicial decisions but also to administrative decisions.")). This principle applies equally regardless of whether it is a state or federal tribunal that acts in a judicial capacity. *Id.* at 108 (citing see *Univ. of Tenn v. Elliott*, 478 U.S. 788, 798 (1986)). There are two requirements to apply collateral estoppel:

> First, the administrative tribunal must have acted "in a judicial capacity," resolved issues properly before it, and must provide the party against whom estoppel is asserted with a "full and fair opportunity" to litigate his claims, e.g., provide that party "ample opportunity to present his views and to cross-examine the witnesses against him." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192 (3d Cir. 1993). Second, pursuant to the Full Faith and Credit Clause, 28 U.S.C. § 1738, the federal court must look to the law of the adjudicating state to determine if a state court would accord the judgment of the administrative tribunal preclusive effect. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999).

*Peterson v. Holmes*, No. 11-2594, 2017 WL 1653949, at *4 (D.N.J. May 2, 2017). Additionally, "[in] section 1983 cases . . . where an agency's ruling is not reviewed by a state court, collateral estoppel is limited to administrative fact-finding." *Id*. at *5 (citing *Edmundson*, 4 F.3d at 189).

Here, it is clear that the ALJ and Commissioner were acting in a judicial capacity when deciding whether the District acted arbitrarily and capriciously. The nature of the proceeding was adversarial, the parties were represented by counsel and had the opportunity to present evidence and testimony. *See O'Hara v. Bd. of Ed.*, 590 F. Supp. 696, 701 (D.N.J. 1984) (finding that an agency acted in a judicial capacity where it "had a full hearing and provided an opportunity for both parties to appear and be represented by counsel, to present evidence and to call, examine and cross-examine witnesses.").

The next question is whether New Jersey courts should give the Commissioner's opinion preclusive effect. "Under New Jersey law, the doctrine of collateral estoppel precludes re-litigation of questions 'distinctly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted. *N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Ed.*, 654 F.2d 868, 876 (3rd Cir. 1981). New Jersey courts similarly apply collateral

11

estoppel to decisions of administrative tribunals. *Id*. at 876, n.12 (citing *City of Hackensack v. Winner*, 82 N.J. 1 (1980)).

The present case presents a near-identical—if not identical—issue that has already been fully litigated between these parties. In order to meet the second element of a HIB violation which was at issue in the prior administrative proceeding, M.U.'s conduct had to "substantially disrupt[] or interfere[] with the orderly operation of the school or the rights of other students." N.J.S.A. 18A:37-14. In order to regulate M.U.'s speech without running afoul of the First Amendment, Defendants must similarly show that M.U.'s conduct "materially disrupt[ed] classwork or involve[d] substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 506. The District had a full and fair opportunity to litigate the issue before the ALJ—it presented three witnesses and seven exhibits. (ALJ Decision, ECF No. 61-1 at 12–13). Despite this, the Commissioner found there was no documentation that M.U.'s conduct substantially disrupted the education environment and/or if there was documentation there is no evidence that it was presented to the District. (Commissioner's Decision, ECF No. 61-1 at 3). In this Motion, the District's sole factual evidence upon which it relies to defend its actions is that the student "felt demeaned" by the comments and "shaved off his hair." (Def. Br., ECF No 52-4 at 17).

While the Court will not make a determination at this stage that collateral estoppel indeed applies because neither party asserted nor briefed it, though it would certainly seem to be the case, the analysis demonstrates how the Commissioner's finding in and of itself is sufficient to create a question of fact that precludes summary judgment as to Plaintiff's First Amendment claim. A jury—like the Commissioner—could find that M.U.'s speech was not disruptive to the education environment and thus Defendants had no right to curtail it. Defendants cite no state or federal cases discussing the element let alone showing how another student "feeling demeaned" by the comments and "shav[ing] off his hair" is sufficient to meet the *Tinker* standard. (Def. Br., ECF No

12

52-4 at 17). To the contrary, Defendants primarily rest their defense of the First Amendment claim on their failure to exhaust argument which lacks merit. *See supra* IV.A. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's First Amendment claims.

### C. Hostile Educational Environment Under Title VI

Plaintiff brings a claim for hostile educational environment under Title VI alleging that M.U. was called the "n-word," "stalked" by Principal Kershner, and treated differently than his white peers with respect to the District's HIB investigation process. (Am. Compl., ECF No. 5 ¶¶ 10–11). Defendants argue that Plaintiff has not shown that this conduct was so severe or pervasive as to deprive M.U. of educational opportunities—again with little analysis. (Def. Br., ECF No. 52-4 at 11–15). The Court disagrees. Plaintiff's allegations that M.U. was called the "n-word" combined with the finding of the Commissioner that the District's actions in disciplining N.U. for the Trump incident were "arbitrary, capricious and unreasonable" are more than sufficient for a jury to find that he was subjected to a racially hostile educational environment.

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Third Circuit has explained that under Title VI, "a plaintiff may sue a school for money damages for its failure to address a racially hostile environment. A plaintiff may recover for alleged "severe, pervasive, and objectively offensive" student-on-student harassment if the school "acts with deliberate indifference to known acts of harassment." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (internal citations omitted).

The alleged harassment must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend*

*LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).[8] "Damages are not available for simple acts of teasing and name-calling among school children," even where sex or race is the subject of the teasing. *Id*. at 652. Rather, the harassment must have "a systemic effect on educational programs and activities." *Id*. at 653.[9]

The fact that M.U. was called the "n-word" is, in and of itself, likely sufficient to withstand summary judgment. *Williams v. Lenape Bd. of Educ.*, No. 17-7482, 2020 WL 2111221, at *16

---

[8] While *Davis* discussed a Title IX claim, the Third Circuit has expressly applied its reasoning to Title VI cases. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 n.5 (3d Cir. 2001).

[9] It is not clear whether Plaintiff can show that the alleged conduct deprived M.U. of "access to the educational opportunities or benefits." *Davis*, 526 U.S. at 650. Plaintiff alleges only that M.U. "didn't want to go back to school on many days" because Principal Kershner was "watching" him. (Am. Compl., ECF No. 5 ¶ 8). This is far less than what some courts have found sufficient in this Circuit and others, however there are other courts that have found that the denial of an educational environment free from racial harassment is sufficient in itself. *See Whitfield v. Notre Dame Middle Sch.,* 412 F. App'x 517, 519–21, (3d Cir. 2011) (affirming the district court's finding that conduct did "not rise to the level of severe and pervasive harassment having a systemic effect on an African–American student's access to education" where a student was slapped, scratched, spit on, and told that told by another student that "[i]f I didn't take a shower I would look like you[,] black"); *Hall v. Millersville Univ.*, 22 F.4th 397, 412 (3d Cir. 2022) (finding a genuine dispute of fact as to the severity of the conduct in a Title IX case where a student "rarely left her room and missed class"); *Hayut v. State Univ. of New York*, 352 F.3d 733, 750 (2d Cir. 2003) (finding sufficient evidence that a student was deprived access to educational opportunities in a Title IX case where the harassing "conduct (a) discouraged [the student] from more active involvement in his classroom discussions, (b) compelled her to avoid taking additional courses taught by [her harasser], (c) caused her to withdraw from [the university] altogether, or (d) simply created a disparately hostile educational environment relative to her peers"); *Qualls v. Cunningham*, 183 F. App'x 564, (7th Cir. 2006) ("We agree with the district court that no reasonable person could find that [the student] was deprived of his educational opportunities just because the campus police kept tabs on him from a distance and the university administrators ignored his complaints. The police never threatened him, used racial slurs against him, or attempted to detain him."); *N.K. v. St. Mary's Springs Acad. of Fond Du Lac Wisconsin, Inc.*, 965 F. Supp. 2d 1025 (E.D. Wis. 2013) (finding an issue for trial as to whether a student's drop in grades was sufficient to show that the alleged harassment negatively impacted the student's education); *but see Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012) (finding sufficient that a student "was deprived of a supportive, scholastic environment free of racism and harassment."); *Brooks v. Skinner*, 139 F. Supp. 3d 869, 886 (S.D. Ohio 2015) ("While defendants argue that plaintiffs have produced no evidence that [the student] was deprived of educational opportunities or benefits, a reasonable jury could conclude that [the student] was improperly denied educational benefits as a result of this harassment inasmuch as it deprived him of a supportive, scholastic environment free of racism and harassment."). Yet again neither party asserts nor briefs this issue, and thus the Court will not address it.

(D.N.J. May 4, 2020) ("the use of the n-word is so plainly egregious that a single utterance can be enough to establish a hostile environment" (citing *Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017))); *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545 (3d Cir. 2017) (reversing the grant of summary judgment where someone said the "n-word" in front of an African-American elementary student plaintiff). There is no doubt that the use of the racial slur towards M.U. was egregious, and here Plaintiff has presented additional evidence from which a jury could find that M.U. was subject to a hostile environment.

First, there was another racially charged incident where M.U. was called ugly because he is Black. (Def. SOMF, ECF No. 52-3 ¶ 7). While this is not a case with dozens of instances of racial slurs or abuse occurring during a prolonged period of time, it is also not a single incident.

Second, Plaintiff makes factual allegations that Defendants ignored or at least delayed in conducting a HIB investigation after M.U. was called the "n-word." There is a factual dispute as to when Defendants were first aware that N.U. was called the "n-word," (Pla. SOMF, ECF No. 54-3 ¶¶ 16–19; Def. Resp. to Pla. SOMF, ECF No 57-1 ¶¶ 16–19), and, depending on the outcome of that factual dispute, a jury could determine that the District failed to properly respond and/or engaged in a form of tacit acceptance by delaying an investigation into the "n-word" incident. *See L. L.*, 710 F. App'x at 548, 549 (finding hostile educational environment in a teacher's "tacit acceptance" where the "teacher smiled at the student's comment and walked out of the classroom" after hearing the student use the "n-word").

Finally, as this Court has already discussed in detail above, the Commissioner found that the District acted arbitrarily and capriciously in finding that M.U. committed HIB in the Trump incident. The Commissioner's decision highlighted that the District pursued a HIB investigation and disciplined M.U. without sufficient—or possibly any—evidence that M.U.'s conduct substantially interfered with the other student's learning. A jury could infer racial animus from

such a finding, especially if a jury were to find that the District delayed a HIB investigation when M.U. was the subject of the harassment.

For all these reasons, a jury could find that Defendants subjected M.U. to a hostile educational environment that deprived him of educational opportunities and, thus, Defendants' Motion for Summary Judgment is denied as to Plaintiff's claim for hostile educational environment under Title VI.

### D. Discrimination/Hostile Educational Environment Under the NJLAD

Plaintiff also brings a claim for discrimination and/or hostile educational environment under the NJLAD. (Am. Compl., ECF No. 5).

#### i. Hostile Educational Environment

A hostile educational environment claim under the NJLAD is similar to that under Title VI, "a student seeking to prevail on a hostile environment claim must establish that the complained of conduct was "severe or pervasive enough to" create a hostile environment." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 277 (3d Cir. 2001). All the same evidence listed above that this Court found sufficient to find a hostile educational environment under Title VI, *see supra* IV.C, is equally sufficient to meet the severe or pervasive standard under the NJLAD. Thus, the Court denies summary judgment as to Plaintiff's hostile educational environment claim under the NJLAD. *See L. L.*, 710 F. App'x at 548, 549 (finding the single use of the "n-word" sufficient to establish hostile educational environment under both Title VI and the NJLAD).

#### ii. Discrimination

Courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when analyzing a claim for racial discrimination based on disparate treatment under the NJLAD. *L. L.*, 710 F. Appx at 548 (citing *Bergen Com. Bank v. Sisler*, 157 N.J. 188 (1999)). It bears repeating the parties have again failed to provide any substantial analysis or

16

caselaw on this issue. Defendants' discussion of Plaintiff's NJLAD claims is exclusively limited to the hostile educational environment such that it does not even address the *McDonnell Douglas* framework for a disparate treatment claim. *See Mehta v. Fairleigh Dickinson Univ.*, 530 F. App'x 191, 195 (3d Cir. 2013). The only argument that the Court can glean from Defendants' brief is that M.U. has failed to show a that the alleged harassment was based on race. (Def. Br., ECF No. 52-4 at 12); *see Taylor v. Metzger*, 152 N.J. 490, 498 (1998) (explaining that when a plaintiff alleges racial harassment under the NJLAD, they must demonstrate that the harassing conduct would not have occurred but for the plaintiff's race). Assuming that to be the case, this is wholly unpersuasive for two reasons. First, this case involved the use of a racial slur—about as clear of a racial motivation as there can be. And second, Plaintiff has provided evidence of the District's alleged disparate treatment of M.U. with respect to HIB investigations as compared to his Caucasian peers. Thus, a jury could find that the District's actions in quickly and effectively responding to a Caucasian student's complaint while failing to address complaints by M.U. were racially motivated.

Further, for all the reasons expressed above, the combination of the "n-word" and ugly incidents and the Commissioner's finding that the District's actions regarding the HIB investigation and discipline were "arbitrary, capricious and unreasonable," Plaintiff has plainly made a prima facie case for discrimination under the NJLAD.[10] *See L. L.*, 710 F. Appx at 548 ("The complaint about the teacher's purported tacit acceptance of the student's use of a racial epithet and the other complaints, if proved at trial, are sufficient to support an inference that the School District's actions were discriminatory. Accordingly, we conclude that plaintiffs adduced a prima facie case of discriminatory treatment under . . . the NJLAD.").

---

[10] Defendants' brief does not put forward a legitimate reason for their actions nor does either party engage in a pretext analysis and, thus, neither will the Court.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, (ECF No. 52), is denied in its entirety.[11] An appropriate Order will follow.

*Christine P. O'Hearn* (signature)
CHRISTINE P. O'HEARN
**United States District Judge**

---

[11] While there appears to be a question as to whether and to what extent any of the individual Defendants can be liable for any of the Plaintiff's claims, Defendants did not assert any such legal arguments and failed to address such arguments in their Motion. Thus, the Court will not address the issue.